**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NGHI TA, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| EINSTEIN HEALTHCARE NETWORK, | |
| Defendant. | |

Plaintiff Nghi Ta ("Plaintiff") brings this Class Action Complaint on behalf of himself and all others similarly situated, against Defendant, Einstein Healthcare Network ("Einstein" or "Defendant"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to him, which are based on personal knowledge:

<u>**NATURE OF THE CASE**</u>

1.      Healthcare providers that handle sensitive, personally identifying information ("PII") or protected health information ("PHI") owe a duty to the individuals to whom that data relates. This duty arises because it is foreseeable that the exposure of PII or PHI to unauthorized persons—and especially hackers with nefarious intentions—will result in harm to the affected individuals, including, but not limited to, the invasion of their private health matters.

2.      The harm resulting from a data breach manifests in a number of ways, including identity theft and financial fraud, and the exposure of a person's PII or PHI through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives. Mitigating that risk, to the extent it is even possible to do so, requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, and take a number of additional prophylactic measures.

3.      As a healthcare provider, Einstein is required by law to provide every patient with a Notice of Privacy Practices. In its Notice of Privacy Practices, Einstein advises its patients that: "[w]e are required by law to keep your identifiable protected health information private" and "[w]e will not use or disclose your protected health information . . . unless [authorized by law or] you authorize us, in writing, to do so."[1]

4.      Einstein's Notice of Privacy Practice also provides "In certain instances, you have the right to be notified in the event that we, or one of our Business Associates, discover an inappropriate use or disclosure of your protected health information. Notice of any such use or disclosure will be made in accordance with state and federal requirements."[2] Under federal law – notice must be provided within 60 days.

5.      Einstein knowingly obtains patient PII and PHI and has a resulting duty to securely maintain such information in confidence.

6.      Plaintiff brings this class action on behalf of individual patients of Einstein whose PII and/or PHI was accessed and exposed to unauthorized third parties during a data breach of Einstein's e-mail systems, for which Einstein states occurred between August 5, 2020 and August 17, 2020 (the "Data Breach").

7.      Despite that Einstein became aware of the Data Breach by August 10, 2020,[3] it failed to notify Plaintiff and the putative Class members within 60 days as required by law. Notably, Einstein failed to notify Plaintiff of the Data Breach for more than five months from its discovery of the same.

8.      Plaintiff, on behalf of himself and the Class as defined herein, brings claims for negligence, negligence *per se*, breach of fiduciary duty and declaratory judgment, seeking actual

---

[1] https://www.einstein.edu/upload/docs/Einstein/privacy%20practices%20poster%208.15.16%20final.pdf (last visited 4/27/2021).

[2] *Id.*

[3] https://www.einstein.edu/datasecurity (last visited 4/27/2021).

and putative damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

9.     Based on the public statements of Einstein to date, a wide variety of PII and PHI was implicated in the breach, including, but not limited to: names, social security numbers, dates of birth, medical records or patient account numbers, health insurance information, and/or treatment or clinical information, such as diagnosis, medications, provider, type of treatment, or treatment locations.

10.     As a direct and proximate result of Einstein's inadequate data security, and its breach of its duty to handle PII and PHI with reasonable care, Plaintiff and Class Members' PII and/or PHI has been accessed by hackers and exposed to an untold number of unauthorized individuals.

11.     Plaintiff and Class Members are now at a significantly increased risk of fraud, identity theft, misappropriation of health insurance benefits, intrusion of their health privacy, and similar forms of criminal mischief, which risk may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy protecting themselves, to the extent possible, from these crimes.

12.     To recover from Einstein for these harms, Plaintiff and the Class seek damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring Einstein to: 1) disclose, expeditiously, the full nature of the Data Breach and the types of PII and PHI accessed, obtained, or exposed by the hackers; 2) implement improved data security practices to reasonably guard against future breaches of PII and PHI possessed by Einstein; and 3) provide, at its own expense, all impacted victims with lifetime identity theft protection services.

## **PARTIES**

13.     Plaintiff Nghi Ta is an adult individual who at all relevant times has been a citizen and resident of the Commonwealth of Pennsylvania and was a patient of Defendant's, receiving services at the Klein Building on the campus of Einstein Medical Center at 5401 North Broad Street in Philadelphia.

14.    On or about January 21, 2021, Plaintiff received a written notification from Defendant informing Plaintiff that his PII and PHI may have been accessed or exposed to unknown, unauthorized third parties during the Data Breach.

15.    Defendant Einstein is a Pennsylvania Not For Profit Corporation with its principal place of business in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

17.    This Court has personal jurisdiction over Defendant because it is headquartered in and is a citizen of the Commonwealth of Pennsylvania.

18.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1), because a substantial part of the acts, omissions, and events giving rise to Plaintiff's claims occurred in this District. Further, Defendant resides in this District and is a resident of Pennsylvania.

## FACTUAL BACKGROUND

**A.    Einstein Knew the Risks of Storing Valuable PII and PHI and the Foreseeable Harm to Victims**

19.    At all relevant times, Einstein knew it was storing and permitting its employees to use internet accessible email accounts to transmit, valuable, sensitive PII and PHI and that, as a result, Einstein's systems would be attractive targets for cybercriminals.

20.    Einstein also knew that any breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII and PHI was compromised, as well as intrusion into their highly private health information.

21.     These risks are not merely theoretical; in recent years, numerous high-profile breaches have occurred at businesses such as Equifax, Yahoo, Marriott, Anthem, and many others.

22.     PII has considerable value and constitutes an enticing and well-known target to hackers.  Hackers easily can sell stolen data as a result of the "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[4] PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.

23.     The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the U.S.  According to the IRTC, in 2019, there were 1,473 reported data breaches in the United States, exposing 164 million sensitive records and 705 million "non-sensitive" records.[5]

24.     In tandem with the increase in data breaches, the rate of identity theft and the resulting losses has also increased over the past few years. For instance, in 2018, 14.4 million people were victims of some form of identity fraud, and 3.3 million people suffered unrecouped losses from identity theft, nearly three times as many as in 2016. And these out-of-pocket losses more than doubled from 2016 to $1.7 billion in 2018.[6]

---

[4] Brian Krebs, *The Value of a Hacked Company*, KREBS ON SECURITY (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited 4/27/2021).

[5] *Data Breach Reports: 2019 End of Year Report*, IDENTITY THEFT RESOURCE CENTER, at 2, *available at* https://notified.idtheftcenter.org/s/resource#annualReportSection (last visited 4/27/2021).

[6] Insurance Information Institute, *Facts + Statistics: Identity theft and cybercrime*, available at https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft %20And%20Fraud%20Reports,%202015-2019%20(1) (last visited 4/27/2021).

25.    The healthcare industry has become a prime target for threat actors: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[7]

26.    "Hospitals store an incredible amount of patient data. Confidential data that's worth a lot of money to hackers who can sell it on easily – making the industry a growing target."[8]

27.    The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Einstein's patients especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

28.    As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI records can go from $20 say up to—we've even seen $60 or $70."[9]  A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market, whereas stolen payment card information sells for about $1.[10]

29.    According to Experian:

Having your records stolen in a healthcare data breach can be a prescription for financial disaster. If scam artists break into healthcare networks and grab your medical information, they can impersonate you to get medical services, use your

---

[7]  https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last visited 4/27/2021).

[8] *Id.*

[9] IDExperts, You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows: https://www.idexpertscorp.com/knowledge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat (last visited 4/27/2021).

[10] PriceWaterhouseCoopers, *Managing cyber risks in an interconnected world*, Key findings from The Global State of Information Security® Survey 2015: https://www.pwc.com /gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf (last visited 4/27/2021).

data open credit accounts, break into your bank accounts, obtain drugs illegally, and even blackmail you with sensitive personal details.

ID theft victims often have to spend money to fix problems related to having their data stolen, which averages $600 according to the FTC. But security research firm Ponemon Institute found that healthcare identity theft victims spend nearly $13,500 dealing with their hassles, which can include the cost of paying off fraudulent medical bills.

Victims of healthcare data breaches may also find themselves being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores. In the worst cases, they've been threatened with losing custody of their children, been charged with drug trafficking, found it hard to get hired for a job, or even been fired by their employers.[11]

30.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[12]

31.     Even if stolen PII or PHI does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

---

[11] Experian, Healthcare Data Breach: What to Know About them and What to Do After One: https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last visited 4/27/2021).

[12] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/new.items/d07737.pdf (last visited 4/27/2021).

32.     Einstein certainly knew the foreseeable risk of failing to implement adequate cybersecurity measures; indeed, this is not the first time it failed to protect its patients PII and PHI. In 2016, Einstein reported that PHI of nearly 3,000 of its patients was exposed through a website database configuration error that occurred because of its failure to implement proper cybersecurity measures.[13]

**B.    Einstein Breached its Duty to Protect its Patients PII and PHI**

33.     On August 10, 2020, Einstein identified suspicious activity in certain of its employees' email accounts.

34.     According to Einstein, it hired a forensic investigator to assist it with its investigation.

35.     The investigation revealed that the hacker had gained access to the accounts by August 5, 2020. After discovering the Data Breach, Einstein did not contain the breach for another 7 days, until August 17, 2020 – meaning the hacker had unlimited access to the employees' email accounts (and Plaintiff's and the class's breached PII and PHI) for nearly two weeks.

36.     The patient PII and PHI exposed in the Data Breach included names, social security numbers, dates of birth, medical records or patient account numbers, health insurance information, and/or treatment or clinical information, such as diagnosis, medications, provider, type of treatment, or treatment locations.

37.     As of October 2020, Einstein had quietly posted on its website about the Data Breach and claimed it was mailing letters to affected patients. At that same time, it was asserting that the cyberattack only affected 1,821 patients' information and claimed it was sending notice to those affected.[14]

---

[13]     https://patch.com/pennsylvania/norristown/einstein-health-suffers-possible-patient-data-breach-0?platform=hootsuite (last visited 4/27/2021).

[14]     https://www.beckershospitalreview.com/cybersecurity/einstein-health-network-employee-email-hack-exposes-1-821-patients-info-4-details.html (last visited 4/27/2021); https://www.compliancejunction.com/roper-st-francis-healthcare-phishing-attack-impacts-approximately-190000-people/ (last visited 4/27/2021).

38.     The Data Breach, however, was far more wide reaching than Einstein let on.

39.     All in all, more than 350,000 patients of Einstein had their PII and/or PHI breached.[15]

40.     While Einstein claims to have completed its investigation by November 16, 2020, it failed to reveal the full extent of the Data Breach until January 20, 2021 when it updated its website notice and finally began sending letters to its victims.[16]

41.     The Data Breach occurred as a direct result of Einstein's failure to implement and follow basic security procedures, and its failure to follow its own policies, in order to protect its patients' PII and PHI.

42.     Plaintiff received a notice from Einstein dated January 21, 2021, advising that Plaintiff was a victim of Einstein's data security failures exposing Plaintiff's name, date of birth, medical record or patient account number, health insurance information, and/or treatment of clinical information, such as diagnosis, medication, provider, type of treatment, or treatment location to criminal hackers. The Notice is attached as **Exhibit A**.

43.     Like Plaintiff, the Class Members received similar notices informing them that their PII and/or PHI was exposed in the Data Breach.

**C.     Plaintiff and Class Members Suffered Damages**

44.     For the reasons mentioned above, Einstein's conduct, which allowed the Data Breach to occur, caused Plaintiff and members of the Class significant injuries and harm in several ways. Plaintiff and members of the Class must immediately devote time, energy, and money to: 1) closely monitor their medical statements, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing

---

[15] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited 4/27/2021).

[16] https://www.einstein.edu/datasecurity (last visited 4/27/2021).

attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

45.    Once PII or PHI is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Einstein's conduct. Further, the value of Plaintiff and Class members' PII and PHI has been diminished by its exposure in the Data Breach.

46.    As a result of Einstein's failures, Plaintiff and Class members are at substantial increased risk of suffering identity theft and fraud or misuse of their PHI.

47.    Plaintiff and Class members are also at a continued risk because their information remains in Einstein's systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as Einstein fails to undertake the necessary and appropriate security and training measures to protect its patients' PII and PHI.

## CLASS ALLEGATIONS

48.    Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class:

> All individuals in the United States whose PII and/or PHI was compromised in the Einstein data breach which occurred starting in August 2020 (the "Class").

49.    Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

50.    Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

51.    The requirements of Rule 23(a)(1) are satisfied.  The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The

disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court. The exact size of the class and the identities of the individual members thereof are ascertainable through Defendant's records, including but not limited to, the files implicated in the Data Breach, but based on public information, the Class includes millions of individuals.

52.    The requirements of Rule 23(a)(2) are satisfied.  There is a well-defined community of interest, and there are common questions of fact and law affecting members of the Class. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

      a.    Whether Defendant had a duty to protect the PII and PHI of Plaintiff and Class Members;

      b.    Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI, and breached its duties thereby;

      c.    Whether Defendant breached its fiduciary duty to Plaintiff and the Class.

      d.    Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct;

      e.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

      f.    Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

53.    The requirements of Rule 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of the members of the Class.  The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same failure by Defendant to safeguard PII and PHI.

54.    Plaintiff and members of the Class were all patients of Einstein, each having their PII and PHI obtained by an unauthorized third party.

55.    The requirements of Rule 23(a)(4) are satisfied. Plaintiff is an adequate representative of the Class because their interests do not conflict with the interests of the members of the Class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class.  In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class members are substantially identical as explained above.

56.    The requirements of Rule 23(b)(3) are satisfied here because a class action is the superior method of litigation for these issues, and common issues will predominate. While the aggregate damages that may be awarded to the members of the Class are likely to be substantial, the damages suffered by the individual members of the Class are relatively small.  As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them.  Certifying the case as a Class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendant's uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

### FIRST CAUSE OF ACTION
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

57.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

58.    Einstein owed a duty under common law to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

59.     Einstein's duty to use reasonable care arose from several sources, including but not limited to those described below.

60.     Einstein had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII and PHI that is routinely targeted by criminals for unauthorized access, Einstein was obligated to act with reasonable care to protect against these foreseeable threats.

61.     Einstein's duty also arose from Einstein's position as a provider of healthcare. Einstein holds itself out as a trusted provider of healthcare, and thereby assumes a duty to reasonably protect its patients' information.  Indeed, Einstein, as a direct healthcare provider, was in a unique and superior position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

62.     Einstein breached the duties owed to Plaintiff and Class Members and thus was negligent. Einstein breached these duties by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; and (g) failing to follow its own privacy policies and practices published to its patients.

63.     But for Einstein's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII and PHI would not have been compromised.

64.     As a direct and proximate result of Einstein's negligence, Plaintiff and Class Members have suffered injuries, including:

a.      Theft of their PII and/or PHI;

b.      Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c.      Costs associated with purchasing credit monitoring and identity theft protection services;

d.      Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.      Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Einstein Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.      The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals;

g.      Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Einstein with the mutual understanding that Einstein would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others; and

h.      Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Einstein's possession and is subject to further breaches so long as Einstein fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data.

65.    As a direct and proximate result of Einstein's negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### NEGLIGENCE PER SE
### (On Behalf of Plaintiff and the Class)

66.     Plaintiff restates and realleges all proceeding factual allegations above as if fully set forth herein.

67.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Einstein or failing to use reasonable measures to protect PII and PHI. Various FTC publications and orders also form the basis of Einstein's duty.

68.     Einstein violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with the industry standards. Einstein's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of a data breach involving PII and PHI of its patients.

69.     Einstein's violation of Section 5 of the FTC Act constitutes negligence *per se*.

70.     Plaintiff and members of the Class are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

71.     Einstein is an entity covered under the Health Insurance Portability and Accountability Act ("HIPAA"), which sets minimum federal standards for privacy and security of PHI.

72.     Pursuant to HIPAA, 42 U.S.C. § 1302d, *et. seq.*, and its implementing regulations, Einstein had a duty to implement and maintain reasonable and appropriate administrative, technical, and physical safeguards to protect Plaintiff's and the Class members' electronic PHI.

73.     Specifically, HIPAA required Einstein to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by its workforce to satisfy HIPAA's security requirements. 45 CFR § 164.102, *et. seq*.

74.     HIPAA also requires Einstein to provide Plaintiff and the Class members with notice of any breach of their individually identifiable PHI "without unreasonable delay and in no case later than 60 calendar days after discovery of the breach." 45 CFR §§ 164.400-414.

75.     Einstein violated HIPAA by actively disclosing Plaintiff's and the Class members' electronic PHI; by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PHI; and by failing to provide Plaintiff and Class members with notification of the Data Breach within 60 days after its discovery.

76.     Plaintiff and the Class members are patients within the class of persons HIPAA was intended to protect.

77.     Einstein's violation of HIPAA constitutes negligence *per se*.

78.     Pursuant to Pennsylvania's Policies and Procedures for Medical Records Services, 28 Pa. Code § 115.1, *et. seq*. (the "Pa. Policies"), Einstein was required to have a medical record service "properly equipped to enable its personnel to function in an effective manner and to maintain medical records so that they are readily accessible and secure from unauthorized use."

79.     It was also required to train its medical record service personnel. *Id.*

80.     Additionally, Einstein was required to store medical records "in such a manner as to provide protection from loss, damage and unauthorized access." *Id.*

81.     Pursuant to the Pa. Policies, Einstein was required to treat "all records" (including those of Plaintiff's and the Class members) "as confidential." *Id.*

82.     Einstein violated the Pa. Policies by actively disclosing Plaintiff's and the Class members' PHI; by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PHI; and failing to maintain the confidentiality of Plaintiff's and the Class members' records.

83.     Plaintiff and the Class members are patients within the class of persons the Pa. Policies was intended to protect.

84.     Einstein's violation of the Pa. Policies constitutes negligence *per se*.

85.    The harm that has occurred as a result of Einstein's conduct is the type of harm that the FTC Act, HIPAA, and the Pa. Policies was intended to guard against.

86.    As a direct and proximate result of Einstein's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and the Class)**

87.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

88.    Plaintiff and Class Members have an interest, both equitable and legal, in the PII and PHI about them that was conveyed to, collected by, and maintained by Einstein and that was ultimately accessed or compromised in the Data Breach.

89.    As a healthcare provider, Einstein has a fiduciary relationship to its patients, like Plaintiff and the Class members.

90.    Because of that fiduciary and special relationship, Einstein was provided with and stored private and valuable PHI related to Plaintiff and the Class.

91.    Einstein owed a fiduciary duty under common law to Plaintiff and Class Members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

92.    Einstein breached the duties owed to Plaintiff and Class Members and thus was negligent. Einstein breached these duties by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards'

17

key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; and (g) failing to follow its on privacy policies and practices published to its patients.

93.    But for Einstein's wrongful breach of its duties owed to Plaintiff and Class Members, their PII and PHI would not have been compromised.

94.    As a direct and proximate result of Einstein's negligence, Plaintiff and Class Members have suffered injuries, including:

a.    Theft of their PII and/or PHI;

b.    Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c.    Costs associated with purchasing credit monitoring and identity theft protection services;

d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Einstein Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Einstein with the mutual understanding that Einstein would safeguard

Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others; and

h.    Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Einstein's possession and is subject to further breaches so long as Einstein fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data.

95.    As a direct and proximate result of Einstein's breach of its fiduciary duty, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

96.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

97.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

98.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and PHI and whether Einstein is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII and PHI. Plaintiff alleges that Einstein's data security measures remain inadequate. Einstein denies these allegations. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his PII and PHI and remains at imminent risk that further compromises of his PII and/or PHI will occur in the future.

99.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Einstein owes a legal duty to secure patients' PII and PHI and to timely notify patients of a data breach under the common law, Section 5 of the FTC Act, HIPAA, and various state statutes; and

b.    Einstein continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII and PHI.

100.    This Court also should issue corresponding prospective injunctive relief requiring Einstein to employ adequate security protocols consistent with law and industry standards to protect patients' PII and PHI.

101.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Einstein. The risk of another such breach is real, immediate, and substantial. If another breach at Einstein occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

102.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Einstein if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Einstein of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Einstein has a pre-existing legal obligation to employ such measures.

103.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Einstein, thus eliminating the additional injuries that would result to Plaintiff and consumers whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all other similarly situated, prays for relief as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.    For damages in an amount to be determined by the trier of fact;

d.    For an order of restitution and all other forms of equitable monetary relief;

e.    Declaratory and injunctive relief as described herein;

f.    Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

g.    Awarding pre- and post-judgment interest on any amounts awarded; and

h.    Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

A jury trial is demanded on all claims so triable.

Dated: April 29, 2021                              Respectfully Submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch, Esquire
**CARLSON LYNCH, LLP**
1133 Penn Ave., Fl. 5
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
glynch@carlsonlynch.com

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, Pennsylvania 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169
rgolomb@GolombHonik.Com
KGrunfeld@GolombHonik.Com

*Counsel for Plaintiff*